# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

TYRONE HAMPTON,

          Plaintiff,

      v.

JOHN DOE #1 and JOHN DOE #2,     Case No. 3:26-cv-00063-SLG

          Defendants.

## **SCREENING ORDER**

On February 4, 2026, self-represented prisoner Tyrone Hampton ("Plaintiff") filed a complaint and civil cover sheet.[1] Plaintiff prepaid the full filing fee.[2] Plaintiff's Complaint alleges that two unidentified medical personnel employed by the Alaska Department of Corrections ("DOC") violated his right to receive adequate medical health care by denying him prescription eyeglasses and an optometry evaluation, resulting in worsening vision.[3] For relief, Plaintiff seeks $5,000,000 in compensatory damages, $500,000 in punitive damages, injunctive relief requiring the provision of needed medical care, and a declaratory judgment that prohibits DOC from denying medical care to federal detainees in its custody.[4]

---

[1] Dockets 1-2.

[2] Filing fee: $ 405.00, receipt number 100022991 (Entered: 02/06/2026).

[3] Docket 1.

[4] Docket 1 at 10.

## I.    Screening Review of Plaintiff's claims

Plaintiff is a pretrial federal detainee housed at the Anchorage Correctional Complex ("ACC") who has been at this DOC facility since October 20, 2022.[5] Plaintiff's Complaint alleges that his prescription eyeglasses were confiscated when he was booked into ACC. Plaintiff claims that on December 25, 2023, his request for his prescription glasses was denied "due to the metal framing" of those glasses.[6] Plaintiff claims that on February 16, 2024, he submitted a request ("RFI") to be seen by an optometrist for prescription eyeglasses; DOC medical staff, Susanne Daley, responded that he had been placed on sick call.[7] Although the DOC records indicate a Snellen eye exam was performed on February 17, 2024,[8] Plaintiff alleges the exam never occurred.[9] It appears the United States Marshal Service ("USMS") denied Plaintiff's request for an optometry visit on February 27, 2024, because Plaintiff "does not present with ocular complaints other than decreased visual acuity and this prisoner's visual acuity does not meet the

---

[5] Federal prisoners in Alaska are housed in state Department of Corrections (DOC) facilities because there is no federal pretrial detention center in Alaska. This is the result of a longstanding intergovernmental agreement between the U.S. Marshals Service and the Alaska DOC. *See* 18 U.S.C. § 4013 (allowing the USMS to contract with state/local jails for detention space).

[6] Docket 1 at 3. *See also* Docket 1-1 at 2 (DOC records indicating that DOC denied Plaintiff's request to be provided with his prescription glasses on December 27, 2023).

[7] Docket 1 at 3.

[8] Docket 1-2 at 5.

[9] Docket 1-2 at 4.

Case No. 3:26-cv-00063-SLG, *Hampton v. John Doe #1, et al.*
Screening Order
Page 2 of 7

guideline requirement" for an optometry visit.[10] It appears that Plaintiff was not notified of the USMS decision at that time.

Plaintiff claims that over one year later, on March 24, 2025, he filed a grievance with DOC stating that he still had not been seen by an optometrist and that it was becoming "hard for him to see and read."[11] On March 25, 2025, DOC denied Plaintiff's grievance and informed him that the USMS had denied his request to see an optometrist in February 2024 and provided him with a copy of the USMS's denial form.[12]

After further appeals, on May 14, 2025, the DOC Divisions Operations Manager referred Plaintiff's grievance to medical staff for investigation.[13] The DOC investigator findings, dated June 16, 2025, recounted the 2/15/24 reading glasses RFI, the 2/16/24 optometrist RFI, the 2/17/24 Snellen eye exam, the 2/27/24 USMS denial, the failure to notify Mr. Hampton of the USMS's decision at that time, and Mr. Hampton's 3/24/25 follow-up RFI when Mr. Hampton was informed of the USMS denial.[14] The Superintendent agreed with the investigator's findings on June 18, 2025.[15] On June 25, 2025, Mr. Hampton appealed the investigator's findings,

---

[10] Docket 1-2 at 16.

[11] Docket 1 at 4. *See also* Docket 1-2 at 17.

[12] Docket 1-2 at 17.

[13] Docket 1-2 at 8-9.

[14] Docket 1-2 at 5.

[15] Docket 1-2 at 5.

Case No. 3:26-cv-00063-SLG, *Hampton v. John Doe #1, et al.*
Screening Order
Page 3 of 7
Case 3:26-cv-00063-SLG    Document 4    Filed 07/07/26    Page 3 of 7

disputing that the eye exam had occurred and claiming worsening harm to his eyesight.[16] On June 30, 2025, DOC's Standards Administrator responded, indicating that he had forwarded the matter to the Medical Advisory Committee for the final administrative resolution.[17] The decision of the Medical Advisory Committee was not filed with the Complaint.

In Claim 1, Plaintiff alleges that DOC employee John Doe #1 withheld critical information—presumably, the USMS declination of the optometry visit—beginning on February 27, 2024, and continuing for 409 days, which Plaintiff alleges constituted deliberate indifference to his serious medical needs.[18] In Claim 2, Plaintiff alleges that on or about June 20, 2025, John Doe #2 failed to take reasonable measures to reduce Plaintiff's injuries when he failed to review documentation and failed to issue a written decision on the merits of Plaintiff's grievance, which Plaintiff claims caused him to "suffer the loss of his vision."[19] Presumably this is in connection with the investigator's findings made near that time. With his Complaint, Plaintiff includes an excerpt from an Interagency Governmental Agreement ("IGA") dated February 1992, which provides that the Local Government agrees "to provide federal prisoners with the same level of

---

[16] Docket 1-2 at 4.

[17] Docket 1-2 at 2.

[18] Docket 1 at 4.

[19] Docket 1 at 4-5.

medical care and services provided [to] local prisoners."[20]

Upon review, the Complaint does not contain sufficient facts that, accepted as true, demonstrate that either Defendant was deliberately indifferent to Plaintiff's serious medical needs, which requires alleging plausible facts that the defendant (1) made an intentional decision to deny plaintiff of needed medical care; (2) the denial of needed medical care put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonably available measures to abate or reduce the risk of serious harm, even though a reasonable officer under the circumstances would have understood the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff injuries.[21] In particular, it is not clear how failing to inform Plaintiff that the USMS had denied his request for an optometry visit in February 2024 and the investigator's failure to write a more thorough report the following year put Plaintiff at risk of serious harm. Further, Plaintiff has not alleged sufficient facts showing that he has a serious medical need related to his. Int his regard, the results of any Snellen eye exams he has received to measure his visual acuity would be highly relevant.

---

[20] Docket 1-2 at 18.

[21] *See* Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 9.34: Particular Rights—Fourteenth Amendment—Pretrial Detainee's Claim re Conditions of Confinement/Medical Care and the related cases cited therein.

Case No. 3:26-cv-00063-SLG, *Hampton v. John Doe #1, et al.*
Screening Order
Page 5 of 7
Case 3:26-cv-00063-SLG    Document 4    Filed 07/07/26    Page 5 of 7

For these reasons, the Complaint fails to state a plausible claim for deliberate indifference against either Defendant. Although amendment may well be futile, the Complaint is DISMISSED with leave to file an amended complaint to attempt to correct the deficiencies identified in this order.

## II.    Filing an amended complaint

An amended complaint replaces the prior complaint in its entirety.[22] When an amended complaint is filed, the Court treats any previous complaint(s) as non-existent,[23] so a plaintiff must not incorporate by reference any prior pleading, including exhibits. Although Plaintiff is being given an opportunity to file an amended complaint, he must not expand the scope of the case by alleging new unrelated parties or claims. An amended complaint must not include any claims or defendants for which Plaintiff lacks a sufficient legal or factual basis.

If Plaintiff chooses to attach DOC records or other documents to support his allegations, all his information must be included in the amended complaint itself, and he should specifically identify in the amended complaint the page number of the document that supports each of his contentions.

**IT IS THEREFORE ORDERED:**

1.    Plaintiff's Complaint **is DISMISSED** with leave to file an amended complaint.

---

[22] *See* Fed. R. Civ. P. 15; District of Alaska Local Civil Rule 15.1.

[23] *Lacey v. Maricopa County*, 693 F.3d. 896, 907 n.1 (9th Cir. 2012) (en banc).

Case No. 3:26-cv-00063-SLG, *Hampton v. John Doe #1, et al.*
Screening Order
Page 6 of 7

2.	If Plaintiff does not file either an Amended Complaint or Notice of Voluntary Dismissal **within 60 days** from the date of this order, this case shall be dismissed as a "strike" without further notice to Plaintiff.

3.	With this order, the Clerk is directed to send: (1) form PS01, with "FIRST AMENDED" written above the title "Prisoner's Complaint Under the Civil Rights Act 42 U.S.C. § 1983"; (2) form PS09, Notice of Voluntary Dismissal; and (3) Notice of Change of Address.

DATED this 7th day of July, 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
SHARON L. GLEASON
UNITED STATES DISTRICT JUDGE